IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LESLIE POTTER, et al.,**  Plaintiffs,  v.  **LORI GRAY, et al.,**  Defendants. | Case No. 25-CV-00143-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of the Motions to Dismiss filed by Defendants Arrowleaf, Eric Price, Jonathon Colen, Brad Hughes, Yetunde Johnson, Tonya Piephoff, Dulce Quintaro, Joel Vercide, Meredith Woods, and Sara Wright (Docs. 9, 13, 26) relevant to all counts of the Complaint filed by Plaintiffs Leslie Potter, Elaine Dohman, and Michelle Potter. (Doc. 1). Having been fully informed of the issues presented, the Motions to Dismiss are **GRANTED**.

### RELEVANT FACTS AND PROCEDURAL HISTORY

The following facts are derived from Plaintiffs' Complaint (Doc. 1), and the Court accepts them as true for the purpose of analyzing Defendants' Motion to Dismiss. Arrowleaf is a privately owned, not-for-profit company offering behavioral health, developmental and hospital services in Southern Illinois. (Doc. 1, p. 5). Defendant Eric Price ("Price"), an Arrowleaf employee, initiated state court proceedings to detain Plaintiff Leslie Potter and evaluate him at Choate Mental

Health Center ("Choate"). (*Id.*, p. 8).[1] Plaintiffs also allege that Price personally requested a court order that Potter be forcibly detained by police and originally transported to Choate for the psychiatric evaluation, which directly resulted in his involuntary admission to Choate. (*Id.*). While being treated at Choate, Potter was told that he had schizophrenia. (*Id.*, p. 1). Potter believes Choate's attempts to diagnose him with schizophrenia were a form of control used to gaslight patients. (*Id.*, p. 2). Potter claims he was neglected while held in a locked clinical unit and was left severely disabled following several weeks when Choate failed to give proper medical evaluations or diagnoses. (*Id.*).

Choate asserted legal custody over Potter due to his schizophrenia diagnosis; Potter claims custody was obtained through "untrue speculations from the Defendants." (Doc. 1, p. 3). Potter claims that it was only after Potter's mother and grandmother insisted on standard medical tests that doctors realized Potter was suffering from strokes. (*Id.*). Upon this new diagnosis, Potter was discharged to a nursing home where he resides, "mostly unable to walk, speak intelligibly, or safely feed himself" (*Id.*).

Potter alleges that Arrowleaf knowingly failed and/or willfully and maliciously refused to prevent Potter's involuntary admission to Choate. (Doc. 1, p. 6). Potter states that Price filed a petition seeking Potter's involuntary commitment in violation of Arrowleaf's clear policy against seeking involuntary commitments. (*Id.*, p. 11).

---

[1] The Court notes that neither party addresses why Potter was at Arrowleaf to begin with. However, the Court is bound by the factual allegations asserted in the Complaint.

Potter alleges the following as to the role of each Defendant employed at Choate by the Illinois Department of Health Services ("IDHS"). Defendants Lori Gray and Tonya Piephoff were highly positioned administrators at Choate. (*Id.*, p. 4). Defendant Jonathan Colen, D.O., is, or has been, Medical Director at Choate. (*Id.*). Defendant Brad Hughes is/was a statewide medical director with oversight responsibility for Choate. Defendant Joel Vercide is/was a medical doctor at Choate. (*Id.*). Defendant Yutende Johnson is/was a statewide medical director with oversight responsibility for Choate. Defendant Sara Wright is/was a deputy to Tonya Piephoff at Choate. (*Id.*). Defendant Meredith Woods is/was a licensed clinical social worker (LCSW) who had case management responsibility for Potter and his family while the Plaintiff was at Choate. (*Id.*). Defendant Dulce Quintaro was appointed in September of 2023, and by information and belief has remained throughout the relevant time, the Secretary of IDHS. (*Id.*, p. 5). These defendants will be referred to collectively as the "IDHS Defendants."

Potter alleges that Gray twice personally prohibited transportation of Potter to existing appointments for MRI and/or other medical imaging, which would have shown that he was suffering from strokes and motivated a medically appropriate change of treatment plan. (*Id.*, p. 6). He alleges that the remaining IDHS Defendants were aware that Potter was being misdiagnosed and neglected while he was involuntarily confined at Choate, and that they knowingly failed and/or willfully and maliciously refused, to enable competent medical diagnosis and treatment that would have prevented most or much of the harm Potter suffered. (*Id.* pp. 6–8).

Plaintiffs filed a Complaint containing two claims – Count I seeking recovery under 42 U.S.C. § 1983 for failing to prevent Potter's involuntary confinement, and Count II seeking damages for "emotional distress, loss of companionship" under state law for the consequences following Potter's schizophrenia diagnosis while at Choate. (*Id.*, p. 1). The Defendants responded by filing Motions to Dismiss all claims alleged in the Complaint. (Docs. 9, 13, 26). Plaintiffs filed Responses in opposition (Docs. 23, 30). Arrowleaf filed a Reply (Doc. 29).

### APPLICABLE LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded

facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Regarding Plaintiffs' state law claim, as the instant suit was filed in Illinois and both parties have applied Illinois law, the Court applies the same. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611–12 (7th Cir. 2012).

## ANALYSIS

### I. 42 U.S.C. § 1983

Plaintiffs bring this § 1983 claim as one for the redress of a violation of the Fourteenth Amendment's due process clause, which forbids states to deprive persons of life, liberty, or property without due process of law. U.S. CONST. amend. XIV. To succeed on a § 1983 claim, a plaintiff must prove that defendants were acting under color of state law, and that defendants deprived the plaintiff of a right secured by the Constitution or federal law. 42 U.S.C. § 1983.

#### A. Arrowleaf

Potter's claims stem from Arrowleaf employee Price's actions in filing a Petition for Involuntary Commitment pursuant to 405 ILL. COMP. STAT. 5/3-701. The statute allows for any person to execute a petition to admit another involuntarily on an inpatient basis which shall be filed with the court where the respondent resides or is present. *Id.* Compliance with these provisions ensures that the detention or commitment is lawful and protects against claims of false imprisonment or

deprivation of liberty without due process. *See Irvin v. S. Ill. Healthcare*, 128 N.E.3d 1149, 1160 (Ill. App. Ct. 2019).

When a plaintiff brings a § 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under color of state law. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). The state action doctrine requires that a court find such a "close nexus between the State and the challenged action" that the challenged action "may be fairly treated as that of the State itself." *Id.* at 823. The mere fact that a private entity or individual receives state funding, or provides services that benefit the state, does not make it a state actor. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982). To plead that a defendant acted under color of state law, a § 1983 plaintiff must allege that a defendant's invocation of state authority in one way or another facilitated or enabled the alleged misconduct. *DiDonato v. Panatera*, 24 F.4th 1156, 1161 (7th Cir. 2022) (holding that a mere overlap between an official's job responsibilities and his private actions did not mean he was acting under color of state law, as there was no invocation of state authority). A section § 1983 claim can be maintained against a private actor, however, if the private actor had a "meeting of the minds" and "reached an understanding" with a state actor to deprive a plaintiff of their constitutional rights. *Wilson v. Warren County*, 830 F.3d 464, 468 (7th Cir. 2016). Put simply, both the private and state actors must have shared a common, unconstitutional goal to deprive the plaintiff of their constitutional rights. *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991).

Plaintiffs have failed to demonstrate that Arrowleaf acted under color of state law when its employee initiated court proceedings to involuntarily committ Potter to Choate. Plaintiffs do not allege that Arrowleaf was acting in concert with government officials or acting on behalf of the state in a way that violates Potter's constitutional or federal rights. Plaintiffs' sole argument is that Arrowleaf performed a state function when it filed its petition. This Court disagrees.

"[A] private commitment is no more state action than a citizen's arrest, the repossession of chattels, or the ejection of trespassers is. The statutes authorizing or constraining these private activities may or may not be constitutional; the activities themselves remain private." *See Spencer v. Lee*, 864 F.2d 1376, 1381 (7th Cir. 1989) (holding that a private hospital did not act under color of state law when its employee confined the plaintiff against his will). "The citizen who makes a citizen's arrest is not transformed into a state actor by handing over the arrested person to the police . . .". *Id*. at 1382. Involuntary commitment is not a function exclusively reserved to the state, and private actors exercising such powers remain private unless the state coerces or significantly encourages their actions. *Id*.; *see also Ridlen v. Four Cnty. Counseling Ctr.*, 809 F. Supp. 1343, 1350–51 (N.D. Ind. 1992) (holding that the involuntary commitment by a not-for-profit corporation was not a function so reserved to the state to transform the private actor into a state actor). The ruling in *Spencer* demonstrates the private nature of involuntary commitments pursuant to the Illinois Mental Health Code. Similarly, Price's petition to commit Potter to Choate was a private act, not in conjunction with state influence or actors.

Arrowleaf is not a public employee, as it is a nonprofit which provides no services under contract to the state government and does not participate in state or other governmental programs. A private social worker and a private non-profit company are alleged to have sought involuntary commitment confined Potter against his will and to have injured him by improper medical treatment. *Spencer*, 864 F.2d at 1378. As noted in *Spencer*, these are classic allegations of false imprisonment and malpractice – torts for which the common law of Illinois provides remedies that the plaintiff does not suggest are inadequate. *Id*.

The second element of Plaintiffs' § 1983 claim is also not satisfied. To establish a viable claim for the deprivation of a constitutional right against a private organization, Plaintiffs "must demonstrate that a constitutional deprivation occurred as the result of an express policy or custom" of Arrowleaf. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002).

Not only do Plaintiffs fail to allege which policy or custom led to Potter's injuries, they allege that the injuries were caused by Price's actions, which were in direct violation of Arrowleaf's policies. (Doc. 1, p. 11). In acknowledging that Price's actions were against Arrowleaf's "clear policy against that procedure," Plaintiffs fail to show that a constitutional deprivation occurred in accordance with Arrowleaf's customs or with its knowledge. Plaintiffs further establish no causation between Arrowleaf's policy against its employees seeking involuntary commitments and Potter's injuries.

Lastly, Plaintiffs' claim against Arrowleaf under the doctrine of respondeat

superior fails, as there is generally no respondeat superior liability under §1983. *Iqbal*, 556 U.S. at 676. Without personal involvement or liability, there can be no recovery. *Id*. While respondeat superior liability can attach if the conduct causing the constitutional deprivation occurs at the defendant's direction or with its knowledge or consent, this is inapplicable here as shown by Arrowleaf's express policy against involuntary commitments. *Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015).

**B. Price**

Price first argues that the Complaint fails to contain any allegations that demonstrate Price was acting under color of state law when he initiated the court proceedings. (Doc. 14, pp. 7–9). Plaintiffs argue that Price acted "arm-in-arm with or as an agent of the state under color of law." (Doc. 24, pp. 4–8).

Plaintiffs do not specify whether they are suing Price in his official or individual capacity. His omission of the phrase "individual capacity," however, does not necessarily render this solely an official capacity suit. *See Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991); *see also Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (rejecting presumption that § 1983 plaintiffs who fail to designate whether defendant is sued in individual or official capacity intended official capacity suit). Not only do Plaintiffs not allege that Price acted pursuant to his employer's policies, they allege that Price acted contrary to his employer's policies; thus, the claim should be construed as against Price in his individual capacity. *See id*. Moreover, when plaintiffs seek punitive damages under § 1983, it will be construed as asserting a § 1983 claim against the person in his or her individual capacity. *Wynn v. Southward*,

251 F.3d 588, 592 (7th Cir. 2001). Therefore, the Court interprets Count I against Price as a § 1983 claim against him in his individual capacity.

Here, Plaintiffs specifically allege that Price was employed as a social worker by Arrowleaf, a privately owned, not-for-profit company, when he allegedly initiated proceedings to detain and evaluate Plaintiff Potter. (See Doc. 1, pp. 5–8). The Complaint does not contain any allegations that Price was employed by a governmental entity when he allegedly initiated those proceedings against Plaintiff Potter. The Complaint also does not contain any allegations that Price had a "meeting of the minds" with a state actor to deprive Plaintiff Potter of his constitutional rights. Instead, the sole basis for Plaintiff Potter's § 1983 claim against Price is that Price was a private actor who was allegedly involved in the court proceedings to have Plaintiff Potter detained and evaluated at Choate. (*See id.*). Plaintiffs argue that "[s]tate action began the moment Defendant Price went to Court, effectively making himself a state actor." (Doc. 24, p. 4). This argument is contradicted by Seventh Circuit precedent. As discussed *supra*, under *Spencer*, the act of involuntary commitment by itself is not a state function; it does not transform private actors into public actors without evidence of those actors acting in tandem with state officials or otherwise performing under their direction. *Id.* at 1377. Plaintiffs state no facts tying Price's decision to commit Potter to any state actor or action whatsoever. Accordingly, Plaintiffs' § 1983 claim against Price fails under the first prong.

Turning to the second prong, Price argues that he was not personally responsible for any constitutional deprivations that may have occurred. (Doc. 14, pp.

9–10). Plaintiffs argue that Price sent Potter to Choate despite knowing the conditions there, rendering him personally responsible. (Doc. 24, pp. 8–9).

The Complaint states that "[t]he Defendants' knowing, willful and malicious violations of Plaintiff POTTER's Substantive Due Process right to be free from unconstitutional conditions of confinement was the cause of his rapidly deteriorating physical and mental condition and the ultimate resulting severe disability from a series of strokes." (Doc. 1, p. 12). The Court interprets Potter's claim to center on the treatment he received while at Choate, not the decision to commit him there. "For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). "The personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Id*. To show the requisite level of personal responsibility, plaintiff must meet § 1983's "mental state requirement," which requires allegations of "more than mere negligence"; plaintiff must show that defendants acted or omitted to act with "knowledge [of] or deliberate, reckless indifference" to the wrongfulness of their conduct. *Wilson v. Warren County*, 830 F.3d 464, 469 (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The Complaint does not contain any allegations that Price knew of or consented to the alleged conditions at Choate and/or the medical care that was provided to Plaintiff Potter at Choate. The Complaint also does not contain any allegations that the alleged conditions at Choate and/or the medical care that was

provided to Plaintiff Potter at Choate occurred at the direction of Price. Thus, there are no allegations that demonstrate that Price was personally responsible for the alleged deprivation of Plaintiff Potter's constitutional rights, let alone that Price acted with reckless indifference to any wrongful conduct that may have occurred at Choate. Thus, Plaintiffs fail the second prong as well.

As the Court determines that neither prong is met to establish a § 1983 claim, it need not address whether *Heck* and *Rooker-Feldman* would preclude the Court from awarding damages to Plaintiffs.

**C. IDHS Defendants**

A State is under no constitutional duty to provide substantive services for those within its border. *See Harris v. McRae*, 448 U.S. 297, 318 (1980); *Maher v. Roe*, 432 U.S. 464, 469 (1977). However, "when a person is institutionalized—and wholly dependent on the State—it is conceded by petitioners that a duty to provide certain services and care does exist, although even then a State necessarily has considerable discretion in determining the nature and scope of its responsibilities." *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) (citing *Richardson v. Belcher*, 404 U.S. 78, 83–84 (1971); *Dandridge v. Williams*, 397 U.S. 471, 478 (1970)). "Detainees are entitled to 'the exercise of professional judgment as to the needs of residents'; if professional judgment leads to the conclusion that restraints are necessary for the well-being of the detainee (or others), then the Constitution permits those devices." *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003) (quoting *Seling v. Young*, 531 U.S. 250, 265 (2001)). Therefore, "a professional's decision 'is presumptively valid' and 'liability

may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019) (quoting *Youngberg*, 457 U.S. at 323)).

In a medical context, the *Youngberg* professional judgment standard first requires that the plaintiff show that his medical need was objectively serious. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). Then, the plaintiff must prove that the treatment decision was a substantial departure from the accepted professional standard. *Id*. A plaintiff does so by establishing "(1) that the professional knew of the serious medical need, and (2) disregarded that need." *Id*. Knowledge can be proved if the trier of fact can conclude the plaintiff's medical need was "obvious." *Id*. Disregard of that need can be proved "only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Id*.

It is apparent from the Complaint, nor do the IDHS Defendants appear to be challenging, that Potter had an objectively serious medical need. Plaintiffs allege that Potter was initially diagnosed with schizophrenia and locked in a clinical care unit. (Doc. 1, pp. 1–2). Potter then suffered a series of strokes, deteriorating his physical and mental conditions to the point where he requires heavy medication and nursing home care. (*See id.*).

First, the Court examines the IDHS Defendants' decision to diagnose Potter with schizophrenia. While Plaintiffs go into great detail stating how the diagnosis of schizophrenia remains "disparately defined" and "scientifically unproven," they make no effort to detail how this diagnosis deviated from standard medical practices at all, let alone to the point where it could be considered below a standard of minimal competence. (*See id.*). While Plaintiffs may believe that diagnosing one with schizophrenia is "medically useless," that is a substantially different question to the one required to bring for inadequate medical care under the Due Process Clause. A disagreement with a certain course of treatment does not suggest that those who treat an inmate exhibited deliberate indifference. *See Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). In fact, negligence or even gross negligence is not sufficient for liability; a defendant's actions must be intentional or criminally reckless. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Plaintiffs have failed to plead that the initial diagnosis of schizophrenia was so far afield of professional medical judgment that it fell below the standard of minimal competency.

Plaintiffs also allege that failing to transport Potter for further testing constitutes a violation of substantive due process. The Court disagrees. Specifically, the Complaint alleges that Defendants directly stated to Defendants Gray and/or Piephoff "on one or more occasions that the decision to not transport the Plaintiff to his medical imaging appointments was harmless or the diagnosis of schizophrenia was valid, medical imaging was therefore irrelevant, and Plaintiff [Potter] should only be treated with antipsychotic drugs." (Doc. 1, pp. 9–10). Plaintiffs have plead

themselves out of a claim, as they state that the decision not to give Potter more testing is a direct corollary to the confidence of medical staff at Choate that his schizophrenia diagnosis was sound. Therefore, this decision was a part of the medical judgment that Potter had schizophrenia, so for the reasons mentioned in the preceding paragraph, this claim fails as well.

The Complaint also takes issue with the IDHS Defendants' treatment of Plaintiff Potter's strokes, alleging that Defendants failed to competently diagnose and treat the strokes at an earlier point in time. But here, too, the allegations assert that this failure stemmed from Defendants' exercise of professional judgment in deciding on a course of treatment that focused only on schizophrenia. Moreover, the Complaint itself alleges that Defendants never had knowledge of Plaintiff Potter's strokes until later, and upon discovery they immediately released Plaintiff Potter from custody to receive treatment elsewhere. (*Id.*, p. 3).

As a final note, the Complaint fails to state a Fourteenth Amendment claim with regard to the allegations that Defendants acted in their capacity as administrators rather than as a medical professionals, as the Complaint itself asserts that such administrative decisions were made in direct reliance on the judgment of medical professionals regarding the mental health treatment of Plaintiff. (*See generally* Doc. 1). Defendants Piephoff, Wright, Woods, and Quintaro took actions that were consistent with the treatment plan that was put in place by medical professionals. *See Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (stating that convenience and cost are "permissible factors . . . to consider in making treatment

decisions," as long as they are not "considered to the exclusion of reasonable medical judgment"). The Court finds that even accepting the allegations as true, none of the IDHS Defendants, in either their medical or administrative capacities, violated Potter's Fourteenth Amendment rights. However, because Plaintiffs have not been provided with the opportunity to amend their Complaint, the Court will grant leave to file an amended complaint as to the IDHS Defendants only. ("Nonetheless, we remind district courts that a plaintiff should ordinarily 'be given at least one opportunity to try to amend her complaint before the entire action is dismissed.'") (*White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)) (citing *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 628–29 (7th Cir. 2020))).

## II.     Emotional Distress

It is unclear based on the Complaint whether Plaintiffs are asserting a claim of intentional or negligent infliction of emotional distress. Under either theory, however, the Complaint fails to state a cause of action against any Defendant.

Under Illinois law, to assert a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must establish: (1) the defendant engaged in extreme and outrageous conduct toward the plaintiff; (2) the defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress; (3) the plaintiff endured severe and extreme emotional distress; and (4) the defendant's conduct actually and proximately caused the plaintiff's distress. *Duffy v. Orlan Brook Condo. Owners' Ass'n.*, 981 N.E.2d 1069, 1079 (Ill. App.

Ct. 2012). A complaint for intentional infliction of emotional distress must be "specific, and detailed beyond what is normally considered permissible in pleading a tort action." *Id*. at 1081.

Plaintiffs' Complaint is wholly inadequate, as it fails to allege any facts that satisfy the elements of a claim for intentional infliction of emotional distress. Specifically, they do not allege that any of Defendants' conduct was extreme and outrages, that any such conduct actually and proximately caused injury, and that any Defendant acted with either intention or knowledge that their conduct would inflict severe emotional distress on any Plaintiff. Moreover, the Complaint does not allege that Plaintiffs actually suffered from severe emotional distress. Therefore, the Complaint fails to allege the requisite elements of an IIED claim, and the claim should be dismissed.

`Illinois courts have noted two types of victims in emotional distress cases: direct victims and bystanders." *Schweihs v. Case Home Finance, LLC*, 77 N.E.3d 50, 56 (Ill. 2016). As to a direct victim, a plaintiff must allege that (1) the defendant owed her a duty; (2) the defendant breached that duty; and (3) her injury was proximately caused by that breach. *Johnson v. Bishof*, 33 N.E.3d 624, 648 (Ill. App. Ct. 2015). "A direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact." *Schweihs*, 77 N.E.3d at 59. This requirement is known as the "impact rule." *Id*. at 58. The rule allows a plaintiff to recover for negligent infliction of emotional distress only if distress is "directly and causally related to physical injury." *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir.

2002). Illinois courts have also applied the "zone-of-danger" rule for bystanders. *Cochran v. Securitas Sec. Servs. USA, Inc.*, 93 N.E.3d 493, 498 (Ill. 2017). This rule requires the plaintiff to have been in a zone of physical danger and to have experienced reasonable fear for their own safety due to the defendant's negligence. *Id*. The bystander must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence. *Id*.

Plaintiff's claims for negligent infliction of emotional distress are nothing more than a recasting of her medical negligence claims for which the Court has already determined do not constitute a cause of action. Except for the addition of an allegation that plaintiff suffered and would continue to suffer severe mental and emotional anguish due to her injuries resulting from Defendants' negligent acts or omissions, Plaintiffs' allegations in her negligent infliction of emotional distress counts are identical to the allegations in her medical negligence counts. Although Plaintiff does not articulate her argument as such, she appears to be suggesting, without citation to legal authority or evidentiary support, that Defendants had a duty to not misdiagnose Potter. Plaintiff, however, presents no argument regarding the existence of such a duty. The Court is unaware of any legal authority imposing additional duties of medical professionals that would warrant a separate analysis from the Fourteenth Amendment claim discussed above, where the Court found that the medical professionals at Choate did not violate Potter's Fourteenth Amendments rights. Moreover, as to Plaintiffs Elaine Dohman and Michelle Potter, there are no allegations that either Plaintiff was in the zone of danger at the time of Potter's

diagnosis and subsequent medical treatment, which is fatal to their claim. As Plaintiffs have failed to adequately state a claim for intentional or negligent infliction of emotional distress, that claim must be dismissed with prejudice.

### III. Loss of Companionship

Plaintiffs Elaine Dohman and Michelle Potter's loss of consortium claim must be dismissed because their specific claim is not recognized under Illinois law. Here, the Complaint alleges that Plaintiffs Dohman and Michelle are Plaintiff Potter's mother and grandmother, respectively, and that they both suffered loss of consortium due to the treatment of Plaintiff Potter by Defendants which left him alive but physically and mentally incapacitated. (Doc. 1, pp. 12–13). Illinois state law does not recognize a claim by a parent or grandparent for loss of companionship based on alleged nonfatal injuries to a child or grandchild. *See Vitro v. Mihelcic*, 806 N.E.2d 632, 640 (Ill. 2004). As Potter's grandmother and mother respectively, Dohman and Michelle Potter may not assert a claim of loss of companionship. (*See* Doc. 1, p. 3). Accordingly, this claim must be dismissed with prejudice.

CONCLUSION

For the reasons set forth above, the Defendants' Motions to Dismiss (Docs. 9, 13, 26), are **GRANTED**. Count I is **DISMISSED** with prejudice as to Defendants Arrowleaf and Price, but without prejudice as to Defendants Jonathon Colen, Brad Hughes, Yetunde Johnson, Tonya Piephoff, Dulce Quintaro, Joel Vercide, Meredith Woods, and Sara Wright. Count II is **DISMISSED** with prejudice as to all Defendants. The Clerk of Court is **DIRECTED** to terminate Arrowleaf and Eric Price as parties in

this action. Plaintiffs shall file their amended complaint based on the parameters of this Order no later than October 29, 2025.

**IT IS SO ORDERED.**

**DATED:  September 29, 2025**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
